VAN NORTWICK, J.
C.B.B., a child, appeals a final disposition order entered following a bench trial on the charge of robbery and following the denial of his motion for a judgment of dismissal. Because the State failed to establish a prima facie case of robbery, we conclude that the trial court erred in denying the motion for a judgment of dismissal. Accordingly, we reverse.
C.B.B., then 14 years of age, was charged with delinquency for the alleged commission of the offense of robbery. More particularly, C.B.B. was accused, along with two middle school friends, Z.B. and D.C., of robbing the bicycle of another middle schooler, O.A. According to the testimony of the victim O.A. at the bench trial below, he was riding his bicycle when Z.B. grabbed his handlebars. C.B.B. then struck the victim in the back of the head. The victim abandoned his bicycle and fled on foot. When he later returned to the scene with his mother, the bicycle was gone. It was located the next day in the vicinity of Z.B.; appellant and another mi *1140 nor were nearby. C.B.B., Z.B., and D.C. were all charged. There was a suggestion at the ensuing trial that a confrontation was expected between the victim and appellant because of prior interactions between the two. More particularly, appellant claimed that he punched the victim because the victim previously spit a mouthful of water in his face after losing a basketball game; appellant also claimed the victim threw rocks at him and verbally taunted him prior to the knocking of O.A. from his bicycle. Appellant argued below he did not take the bicycle and had no intent to deprive the victim of his bicycle. The victim testified in pertinent part below:
Q. [by the Prosecutor]: Okay. You did not talk to [C.B.B.] that day at your grandmother’s house?
A. Oh, yes, sir.
Q. Okay. And what did you say to him?
A. I asked him why he wanted to fight me.
Q. And what did he say to you?
A. He said I spit water on him at the park.
THE COURT: I was not able to hear you. What did you say?
THE WITNESS: He said I spit water on him at the park.
THE COURT: You spit water on him at the park?
THE WITNESS: Yes, sir.
THE COURT: Okay.
Q [by the Prosecutor]: He said that you spit water on him?
A. Yes, sir.
Q. Okay. What did you do after you spoke with [C.B.B.]?
A. We shook hands, and he said he was not going to fight me.
Q. Okay. And what did you do after that?
A. I called my momma and told her to come pick me up. She said it was too late, to come home. So, she told me to ride my bike home.
Q. So, you were riding your bike home?
A. Yes, sir.
Q. And did you get stopped again?
A. Yes, sir.
Q. Who stopped you?
A. [C.B.B.].
Q. Was it [C.B.B.]?
A. Yes, sir.
Q. I’m sorry, who stopped you first?
A. Oh, [Z.B.],
Q. And how did he stop you?
A. He grabbed my handlebars and then twisted it.
Q. Did you fall off your bike at that point?
A. Yes, sir.
Q. Okay. And what happened next after you fell?
A. [C.B.B.] ran up behind me and hit me in the back of my head.
Q. And what happened after that?
A. I ran to my grandmother’s house.
Q. Did anyone take your bike?
A. [D.C.]. The next day he told my momma it was his bike.
THE COURT: I was not able to hear you. Hold your head up.
THE WITNESS: The next day he told my momma it was his bike.
MS. BENSON: Objection, You Honor. Hearsay.
THE COURT: I’m not sure what is the question. What is the question Mr. Sherwin?
By Mr. Sherwin:
Q. After [C.B.B.] punched you, did somebody take your bike?
A. [D.C.].
Q. [D.C.] took your bike?
A. Yes, sir.
*1141 Q. Okay, that is it. Thank you.
On cross-examination, the victim further testified:
[Defense Counsel]: Q. [O.A.], you just testified that there was a spitting incident earlier in the day?
A. Yes.
Q. And you spit on [D.C.]?
A. No, sir.
Q. Who was it that you spit on,
[C.B.B.]?
A. Yes, sir. He said I spit on him.
Q. And then immediately before the incident occurred, isn’t it true that you were riding your bike in the area in the same place that these three boys were in?
A. No, sir.
Q. Isn’t it true that you threw a rock at one of the boys?
A. No, sir.
Q. But it is true that you abandoned the bike and ran way?
A. Yes, sir.
Q. Okay. And so you were not there when the bike was taken?
A. No, sir.
Q. Okay. So, you did not see anybody take your bike?
A. No, sir.
Q. Okay. And you do not know why that bike was taken; is that correct?
A. Yes, sir.
Q. Okay. And so the fight occurred because of the earlier incident; isn’t that true?
A. Yes, sir.
Q. I’m sorry?
A. I believe so.
Q. Okay. And so it was not part of the plan to take your bike, that just sort of happened later, right?
A. Yes, sir.
It was further established on cross-examination that, during the students’ talk about the fight, there was no mention of appellant’s bicycle, according to the victim. He denied intentionally spitting on appellant, although he conceded he may have accidently done so. He also denied calling appellant’s girlfriend an unkind word and denied hitting appellant with a rock. Cross-examination concluded with the following exchange between defense counsel and the victim:
Q. So, between you and the boys, [C.B.B. Z.B. and D.C.], you guys were kind of in a beef, right? You were just mad at each other.
A [by the victim]. Yes.
Q. So, the taking of your bike was something separate from this fight, wasn’t it?
A. Yes, ma’am.
In addition, Z.B. also testified that the fight was motivated by the desire to retaliate for the spitting incident and not to obtain the bicycle.
At the conclusion of the prosecution’s case-in-chief, C.B.B. moved for a judgment of dismissal arguing the State had failed to prove a prima facie case of robbery. The motion to dismiss was renewed at the close of evidence. The trial court summarily denied both motions. This appeal ensued.
The grant of a motion for a judgment of dismissal is required only if “the evidence is insufficient to establish a prima facie case of guilt against the child.” Fla. R. Juv. P. 8.110(k); I.M. v. State, 917 So.2d 927, 929 (Fla. 1st DCA 2005). “The standard of review that applies to a motion for judgment of dismissal in a juvenile case is the same standard that applies to a motion for judgment of acquittal in a criminal case.” C.E.L. v. State, 995 So.2d 558, 560 (Fla. 2d DCA 2008), aff'd, 24 So.3d 1181 (Fla.2009) (quoting A.P.R. v. State, 894 So.2d 282, 284 (Fla. 5th DCA 2005)). “We review the trial court’s [disposition] of the motion for dismissal under the de novo standard,” viewing the evidence “in the light most favorable to the State.” C.E.L., *1142 995 So.2d at 560 (quoting R.R.W. v. State, 915 So.2d 633, 634-35 (Fla. 2d DCA 2005)). “If, upon reviewing the evidence in a light most favorable to the State, a rational fact-finder could find the elements of the crime proven beyond a reasonable doubt, then the evidence is sufficient to sustain the adjudication of delinquency.” I.M. v. State, 917 So.2d at 929.
As noted above, appellant was charged as being a delinquent for commission of a strong-armed robbery. As defined in Florida law, robbery is “the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear.” § 812.13(1) Fla. Stat. (2013). Larceny, in turn, has been defined as the carrying away of another’s property with felonious intent. Daniels v. State, 587 So.2d 460, 462 (Fla.1991).
The evidence adduced by the State below showed that the force used by appellant against the victim was not in furtherance of a plan to obtain the victim’s bicycle. Further, there is no basis for finding C.B.B. had an intent to rob the bicycle. As the victim himself admitted, C.B.B. had a pre-existing “beef’ with the victim, and the blow to the head by C.B.B. had nothing to do with the bicycle.
On appeal, the State suggests that C.B.B. could have participated in the attack on the victim knowing someone else intended to commit the robbery. However, as the reviewing court observed in S.G. v. State, “[i]n order to be convicted as a principal for a crime physically committed by another, one must intend that the crime be committed and do some act to assist the other person in actually committing the crime.” 591 So.2d 294, 295 (Fla. 3d DCA 1991) (citing Staten v. State, 519 So.2d 622 (Fla.1988)). Further, “[m]ere knowledge that an offense is being committed is not the same as participation with criminal intent, and mere presence at the scene ... is not sufficient to establish participation.” Collins v. State, 438 So.2d 1036, 1038 (Fla. 2d DCA 1983). Because there is no basis in the record for finding that, when C.B.B. attacked the victim, he knew another juvenile would take the bicycle, the State failed to carry its burden below. Compare R.H. v. State, 649 So.2d 299 (Fla. 2d DCA 1995) (holding that because the evidence only established that the juvenile participated in attacking the victim and did not establish that the juvenile had an intent to participate in the taking of the victim’s jewelry, the adjudication of delinquency for robbery had to be reversed).
Because the trial court erred in denying the motion for a judgment of dismissal, the disposition order is REVERSED.
BENTON, J., concurs, and THOMAS, J., dissents without opinion.